UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-CV-80461-ROSENBERG/BRANNON

STEVEN COCCARO, *on behalf of himself
and all others similar situated*, and SHARON
COCCARO,

     Plaintiffs,

v.

GEICO GENERAL INSURANCE COMPANY,

     Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant GEICO General Insurance Company's Motion to Dismiss Plaintiffs' Third Amended Complaint and Class Allegations [DE 71]. The Motion has been fully briefed, and the Court heard oral argument on the Motion on April 23, 2015.  The Court has reviewed the documents in the case file and is fully advised in the premises. For the reasons set forth below, Defendant's Motion is granted and the case is dismissed with prejudice.

## I.     BACKGROUND[1]

This case concerns a requirement of Florida insurance law which, while technical in nature, has had significant consequences for Plaintiffs and other Floridians. Florida Statute section 627.727 is the statute regarding uninsured and underinsured motor vehicle insurance. Section 627.727(1) requires that insurance companies issuing uninsured/underinsured motor

_____

[1] Because the Court accepts all of the allegations in Plaintiffs' complaint as true for the purposes of the Motion before the Court, the following background facts are taken from Plaintiffs' Third Amended Complaint. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321 (11th Cir. 2012).

vehicle insurance must provide such coverage in an amount equal to the bodily injury liability coverage afforded by the policy, unless applicants opt out of that coverage:

> No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy. . . . **The rejection or selection of lower limits shall be made on a form approved by the office. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully."** If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds.

*Id.* (emphasis added). Hereinafter, the Court refers to the form described in the bold text above as an "opt-out form."

On October 18, 2012, Plaintiff Steven Coccaro applied for a GEICO Florida motor vehicle insurance policy to provide protection for himself and his family members, including his wife, Plaintiff Sharon Coccaro (collectively "the Coccaros" or "Plaintiffs"). DE 68 ¶ 14. Steven Coccaro used the www.geico.com website to apply for his policy, selecting bodily injury liability limits of coverage at $300,000 per person/$300,000 per accident. *Id.* He selected far lower limits of uninsured/underinsured motorist coverage, $10,000 per person/$20,000 per accident, using a drop-down menu on the GEICO website. *Id.* ¶¶ 8, 14, 16. He never viewed an opt-out form, but GEICO auto-populated his e-signature on its opt-out form nonetheless. *Id.* ¶ 14.

2

Plaintiffs allege that both the process and the opt-out form in use at the time Steven Coccaro applied for coverage online were deficient. The drop-down menu did not describe the requirements of Florida law, and the online application process did not require him to view an opt-out form compliant with Florida Statute section 627.727(1) as outlined above. *Id.* ¶¶ 8–9. GEICO's website did have an opt-out form, although not one strictly compliant with the requirements of the statute, at the time Steven Coccaro applied for coverage. *Id.* ¶¶ 10–11. Individuals applying online could only access that form if they voluntarily navigated to it through a link first provided to the applicant after the application process had already been completed. *Id.* ¶ 9. Applicants did not have to view the opt-out form to complete an application, regardless of whether they selected lower limits of uninsured/underinsured motorist coverage, or even rejected such coverage entirely. *See id.* ¶ 9.

The Florida Office of Insurance Regulation ("FOIR") disapproved the form after GEICO submitted it for review, requiring GEICO to revise the opt-out to comply with Florida law. *See id.* ¶ 11; DE 68 Ex. 1. GEICO revised its opt-out form, which was approved by the FOIR on July 8, 2013. DE 68 ¶ 12. Although the form is now complaint with section 627.727, Plaintiffs allege that "the www.geico.com website still is not operated so that an applicant is required to navigate to the form, and be fully advised of his/her options for uninsured/underinsured motorists coverage. Instead viewing the form is still totally optional." *Id.* ¶ 13.

On September 28, 2013, after Steven Coccaro had selected a GEICO insurance policy with lower uninsured/underinsured motorist coverage limits, Sharon Coccaro was severely injured in a motor vehicle collision caused by an uninsured/underinsured motorist. *Id.* ¶ 15. When Plaintiffs filed a claim with GEICO, GEICO sent Steven Coccaro a form letter explaining that he had rejected uninsured/underinsured motorist coverage limits equal to the bodily injury liability limits provided under his policy when he applied via the www.geico.com website, and

had instead selected the lowest level of such coverage available. *Id.* ¶ 16. GEICO tendered Plaintiffs a check for $30,000, which Plaintiffs declined to accept. *Id.* ¶ 17.

Plaintiffs' Third Amended Complaint ("TAC") consists of a single count for declaratory and injunctive relief, brought by the Coccaros on their behalf and that of a putative statewide class. This matter is presently before the Court upon Defendant's Motion to Dismiss Plaintiffs' Third Amended Complaint.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that any claim contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To comply with Rule 8(a)(2), a complaint must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face where the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)). A complaint does not need detailed factual allegations; however, a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

Defendant argues that Plaintiffs' TAC should be dismissed for three reasons: (1) the Coccaros lack standing to pursue declaratory or injunctive relief for themselves, and on behalf of the putative class; (2) no private right of action exists to reform a policy based on an insurer's

4

alleged non-compliance with the form notice requirements included in Florida Statutes sections 627.727(1) and (9); and (3) Plaintiffs have failed to state a legal claim for reformation, which Defendant argues is ultimately the relief that Plaintiffs are seeking. Because the Court finds Defendant's first argument persuasive, it need not address Defendant's other two arguments. For the reasons discussed below, Plaintiffs' TAC is dismissed because they lack standing to seek declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

### A.    The Court Applies Federal Procedural Law to Plaintiffs' Count I

Plaintiffs' Count I is brought "pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Chapter 86 of the Florida Statutes." DE 68 at 9. Plaintiffs argue that this Court should apply the standards of Chapter 86 of the Florida Statutes, citing numerous Florida state court decisions applying those standards, which differ notably from the federal standards under the Declaratory Judgment Act. *See* DE 73 at 3–4. Plaintiffs contend that Chapter 86 is substantive, not procedural, and that this Court should apply Florida's standards under *Erie*. *See id.* at 5 (citing *Marco Island Cable v. Comcast Cablevision of the S., Inc.*, 509 F. Supp. 2d 1158, 1164 (M.D. Fla. 2007)).

It is well established in the Southern District of Florida, however, that Chapter 86 of the Florida Statutes is procedural as opposed to substantive. "Florida's Declaratory Judgment Act is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights." *Garden Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp.*, 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011) (quoting *Strubel v. Hartford Ins. Co. of The Midwest*, No. 809CV01858T17TBM, 2010 WL 745616, at *2 (M.D. Fla. Feb. 26, 2010)); *see also Shapiro v. Gov't Emps. Ins. Co.*, No. 14-CIV-62792, 2015 WL 127897, at *3 (S.D. Fla. Jan. 8, 2015); *Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1343 (S.D. Fla. 2008). The Court accordingly construes Plaintiffs' Count I as a claim for declaratory and

injunctive relief brought under 28 U.S.C. § 2201 exclusively. *See Shapiro*, 2015 WL 127897, at

*3.

**B.    The Future Injury Requirement Applies to Plaintiffs' Requests for Both Declaratory and Injunctive Relief**

In their briefing and at the hearing, Plaintiffs argued that the standing requirements for

declaratory and injunctive relief differ. *See* DE 73 at 6 ("GEICO engages in legal gymnastics,

inexplicably lumping together the standing requirements for a declaratory decree as opposed to

injunctive relief."). However, Plaintiffs fail to articulate any difference between the

requirements, and they do not provide any legal support for this proposition. Moreover,

Plaintiffs' position contradicts the language of *Strickland v. Alexander*, 772 F.3d 876 (11th Cir.

2014). In *Strickland*, the Eleventh Circuit described the injury-in-fact standing requirement as

follows: "Where the plaintiff seeks declaratory *or* injunctive relief, as opposed to damages for

injuries already suffered, for example, the injury-in-fact requirement insists that a plaintiff

'allege facts from which it appears there is a substantial likelihood that he will suffer injury in

the future.'" *Id.* at 883 (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346

(11th Cir. 1999)) (emphasis added). *Strickland*, which is binding precedent upon this Court, did

not distinguish between the two. Accordingly, the same standing requirements apply to

Plaintiffs' requests for both declaratory and injunctive relief.

**C.    Plaintiffs Lack Standing to Pursue Their Claim**

At an "irreducible constitutional minimum," standing imposes upon a plaintiff the

requirement to make the following three showings:

> (1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally
> protected interest which is (a) concrete and particularized, and (b) "actual or
> imminent, not 'conjectural' or 'hypothetical[;]' "
>
> (2) there must be a causal connection between the injury and the conduct
> complained of—the injury has to be "fairly ... trace[able] to the challenged action

of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court[;]" and

(3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)) (citation omitted).

At issue here is the first requirement. As noted above, "[w]here the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, for example, the injury-in-fact requirement insists that a plaintiff allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Strickland*, 772 F.3d at 883 (quotation marks omitted). "[A] plaintiff seeking declaratory or injunctive relief must allege and ultimately prove 'a real and immediate—as opposed to a merely hypothetical or conjectural— threat of future injury.'" *Id.* (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994)). With respect to the issue of injury in fact, the only allegations in Plaintiffs' TAC are that the Coccaros and the class "[h]ave suffered an injury in fact, in that they have already purchased and have been issued a motor vehicle policy by GEICO, where GEICO has violated the strict requirements of Florida law." DE 68 ¶ 31(a); *see also* DE 73 at 7 ("Plaintiffs were injured by GEICO when it auto-populated Mr. Coccaro's e-signature onto a statutorily mandated form that he was never shown.").[2] Although not explicitly tied to the injury-in-fact requirement, the TAC does contain allegations that could be construed as relating to the ongoing or future nature of the injury allegedly suffered by the Coccaros and the class—specifically, that the Coccaros' and class members' GEICO policies may be renewed, and that GEICO's practice of denying high

---

[2] As will become clear, the Court does not, and need not, decide whether an insurer's failure to comply with the specific provisions of section 627.727(1) at issue here creates a private right of action. *See* DE 71 at 9–17 (arguing that the statute does not create a private right of action). However, the Court assumes for purposes of discussion that GEICO's alleged failure to comply with the statute constitutes an injury in fact.

limits of uninsured/underinsured motorist coverage to individuals like the Coccaros, who may or may not have viewed the opt-out form, continues unabated. *See id.* ¶¶ 31(b), 31(c).

GEICO argues that Plaintiffs have not, and cannot, demonstrate a "substantial likelihood that [they] will suffer injury in the future." *Malowney*, 193 F.3d at 1346. GEICO primarily takes issue with the "substantial likelihood" portion of this requirement, framing the issue as follows: according to GEICO, Plaintiffs would have to allege that "they are soon to be involved in a collision with an uninsured/underinsured motorist, that the extent of their injuries will exhaust their UM/UIM policy limits, and that GEICO will reject their claim for benefits equaling the policy's bodily injury limits." DE 71 at 4–5.

The TAC describes the injury in fact suffered by Plaintiffs as the purchase of a GEICO policy which violated the requirements of Florida Statute section 627.727(1). *See* DE 68 ¶ 31(a). The TAC does not clearly address the issue of *future* injury, however. Plaintiffs' Response can be construed as asserting two different theories of standing for purposes of satisfying the future injury requirement. The first theory, which this Order hereinafter refers to as the "accident theory," posits that there exists a substantial likelihood of a future accident with an uninsured/underinsured motorist, with GEICO's denial of a subsequent claim acting as the injury in fact. *See* DE 73 at 13. Under the second theory, which this Order deems the "renewal theory," the injury in fact is the alleged statutory violation; there exists a substantial likelihood of future injury because there exists a substantial likelihood that the Coccaros' policy will be renewed.[3] *See id.* at 13–14.[4] Plaintiffs attempt to analogize their case to cases where plaintiffs were found to have satisfied the future injury requirement, such as *Strickland* and *GTE Directories*

---

[3] The Court finds it doubtful that the Coccaros would renew their existing policy, given their experiences with GEICO up to this point. For purposes of the discussion, however, and in order to bring some finality to the issues, the Court assumes there is a substantial likelihood that the Coccaros will renew their policy.

[4] The Court notes that neither of these theories is adequately pled in the TAC, and for this reason alone the TAC would merit dismissal without prejudice. However, Plaintiffs are on the fourth iteration of their Complaint, and the case has been pending for over a year. Because Plaintiffs have made their positions plain, the Court addresses these issues now.

*Publishing Corp. v. Trimen America, Inc.*, 67 F.3d 1563 (11th Cir. 1995).[5] The Court addresses each theory before discussing *Strickland* and *GTE*.

The Court agrees with GEICO's characterization of the accident theory. Although there may be a substantial likelihood that one of the Coccaros will get into another accident within his or her lifetime, the odds that one of the two will (1) get into an accident (2) with an uninsured/underinsured motorist, (3) suffering sufficiently severe injury to exceed the uninsured/underinsured motorist coverage limits, and that (4) GEICO will refuse to pay their claim beyond the uninsured/underinsured motorist coverage limits, does not qualify as a substantial likelihood of future injury in the Court's opinion. The Court finds the accident theory analogous to the theory advocated by the plaintiff in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In *Lyons*, the plaintiff sought to enjoin Los Angeles police officers from using control holds "except in situations where the proposed victim of said control reasonably appears to be threatening the immediate use of deadly force." *Id.* at 98. The Supreme Court held:

> Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers. Count V of the complaint alleged the traffic stop and choking incident five months before. That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties.
>
> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to

---

[5] Plaintiffs also argue that insurance coverage disputes like the instant case are the "quintessential declaratory judgment action[s]." DE 73 at 5. However, this case is strikingly different from the typical insurance coverage dispute. Such disputes typically involve the interpretation of contracts; here, Plaintiffs' claims rest upon an alleged statutory violation, which they have pled as a class action. Furthermore, broad statements about the nature of insurance coverage disputes inevitably yield to the specifics of the standing inquiry the Court has conducted. Thus, the Court does not find this argument persuasive.

make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner. Although Count V alleged that the City authorized the use of the control holds in situations where deadly force was not threatened, it did not indicate why Lyons might be realistically threatened by police officers who acted within the strictures of the City's policy. If, for example, chokeholds were authorized to be used only to counter resistance to an arrest by a suspect, or to thwart an effort to escape, any future threat to Lyons from the City's policy or from the conduct of police officers would be no more real than the possibility that he would again have an encounter with the police and that either he would illegally resist arrest or detention or the officers would disobey their instructions and again render him unconscious without any provocation.

*Id.* at 105–06 (footnote omitted). As in *Lyons*, a very specific chain of events would need to occur for the Coccaros to suffer a future injury under the accident theory. This is insufficient to establish Article III standing.

The renewal theory requires a different analysis. As the Court understands this theory, Plaintiffs' assertion is that the injury in fact was the alleged statutory violation itself—GEICO's failure to ensure that Steven Coccaro saw and signed the opt-out form before completing the application process. The renewal of the existing policy would constitute the substantial likelihood of future injury. *See* DE 68 ¶ 31(b). Under Florida Statute section 627.727(1), if the insured initially selected limits of uninsured motorist coverage lower than her or his bodily injury liability limits, GEICO is not required to provide the insured with higher limits of uninsured motorist coverage upon, *inter alia*, the policy's renewal.[6]

---

[6] The relevant portion of the statute reads:

> When an insured or lessee has initially selected limits of uninsured motorist coverage lower than her or his bodily injury liability limits, higher limits of uninsured motorist coverage need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits unless an insured requests higher uninsured motorist coverage in writing.

Fla. Stat. § 627.727(1).

The Court does not find the renewal theory persuasive. Under that theory, the injury—the alleged statutory violation—has already occurred. Mr. Coccaro's e-signature was already auto-populated onto the opt-out form. By the explicit terms of section 627.727(1), GEICO is not required to show its policyholders the opt-out form upon renewal of their policies. The alleged statutory violation would not reoccur upon any renewal of Mr. Coccaro's policy, and therefore, the Coccaros are not able to show a substantial likelihood of future injury under the renewal theory.

Furthermore, the instant case is distinguishable from both *Strickland* and *GTE*. Both cases involved factors specific to the plaintiffs that created a substantial likelihood of future injury. In *Strickland*, the Eleventh Circuit concluded that it was substantially likely that another judgment creditor would seek to garnish money from at least one of the Stricklands' bank accounts due to the fact that Strickland and his wife (joint accountholders) were both judgment debtors; that Strickland's wife had judgments against her, as well as other debts likely to be reduced to judgment; that the Stricklands subsided on a very modest income consisting only of Strickland's disability benefits, and were thus very unlikely to satisfy their outstanding debts in the near future; and that Strickland possessed a second account containing only his Social Security disability income. *Strickland*, 772 F.3d at 885. In *GTE*, the Eleventh Circuit concluded that the case or controversy requirement was satisfied because "GTEDPC wished to engage in the specific conduct of contacting Trimen's customers, and Trimen claimed any such contact would result in a lawsuit against GTEDPC." *GTE Directories Publ'g Corp.*, 67 F.3d at 1568. The parties' positions were "crystallized" when communications were exchanged between the two accusing GTE of contacting Trimen's clients, which GTE denied. *Id.* Like *Strickland*, there were specific factors affecting the parties that created a substantial likelihood of future harm.

That is not the case here, for the reasons the Court has discussed above.[7] Accordingly, the Court concludes that Plaintiffs lack standing to pursue their claims.

### D.      Amendment

At the hearing, counsel for GEICO argued that amendment would be futile, and the Court agrees. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," leave to amend should be "freely given." *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (quotation marks omitted). Although leave to amend is generally allowed, the Court believes that the circumstances of the instant case justify its denial. The Court concludes that Plaintiffs should be denied leave to amend their complaint, both because of their "repeated failure to cure deficiencies by amendments previously allowed," and because amendment would be futile.

Plaintiffs have had ample time and numerous opportunities to amend their complaint, and for this reason alone further amendment should be denied. Plaintiffs' class action complaint was filed in state court on February 19, 2014 and removed to federal court on April 3, 2014. *See* DE 1 Ex. 1 at 11. Plaintiffs are currently on the fourth iteration of their complaint, and they have had over a year since removal to present the Court with a viable complaint. They have yet to do so, and the Court believes that this failure qualifies as a "repeated failure to cure deficiencies" sufficient to justify denial of leave to amend. *See McKinley*, 177 F.3d at 1258.

---

[7] Plaintiffs mention one other case the Court wishes to briefly address. They cite *Leszczynski v. Allianz Insurance*, 176 F.R.D. 659 (S.D. Fla. 1997), for the proposition that a class action similar to that in the instant case can proceed. However, *Leszczynski*'s discussion of standing is brief, and it does not discuss the Article III standing requirements. Accordingly, the Court does not consider it useful to the instant discussion, nor would it trump *Strickland*, which is an Eleventh Circuit case and binding precedent upon this Court.

Moreover, the Court believes that any amendment would be futile. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." (quotation marks omitted)). The federal Declaratory Judgment Act requires Plaintiffs to "allege facts from which it appears there is a substantial likelihood that [they] will suffer injury in the future." *Malowney*, 193 F.3d at 1346. The Court has assessed the file and record at length, considered the arguments of the parties, and reviewed the relevant case law. The Court believes there are only two viable injuries that the Coccaros can allege, given the operative set of facts: denial of a claim, or a violation of Florida Statute section 627.727. If the Coccaros' injury is the unpaid amount of their claim, the series of events that would need to take place to recreate that incident—i.e., to create a substantial likelihood of future injury—is too speculative to support Article III standing for the relief sought. *See Lyons*, 461 U.S. at 105–06. If the Coccaros' injury is the alleged statutory violation, that injury exists in the past. GEICO is not required to show its policyholders the opt-out form upon renewal of their policies. *See* Fla. Stat. § 627.727(1). Thus, the alleged statutory violation is not likely to reoccur upon renewal.

It is not the Court's intent to say the Coccaros were not harmed, or that they have no claim against GEICO; rather, the Coccaros' claims cannot support the declaratory and injunctive relief which Plaintiffs have requested in their TAC. Because the Coccaros' claims are dismissed with prejudice, so are the class allegations. *See Prado-Steiman* ex rel. *Prado v. Bush*, 221 F.3d 1266, 1277 (11th Cir. 2000).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Third Amended Complaint and Class Allegations [DE 71] is **GRANTED**. Plaintiffs' Third Amended Complaint [DE 68] is **DISMISSED WITH PREJUDICE**. All pending motions are **DENIED AS MOOT**,

all deadlines are **TERMINATED**, and the Clerk of the Court is directed to **CLOSE THIS CASE**.

      **DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this <u>7th</u> day of May, 2015.

Copies furnished to:                            ROBIN L. ROSENBERG
Counsel of record                               UNITED STATES DISTRICT JUDGE

14